IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 13, 2001

**STATE OF TENNESSEE v. ALBERT JOHNSON**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-06889      W. Fred Axley, Judge**

---

**No. W2000-01694-CCA-R3-CD  -  Filed July 20, 2001**

---

The defendant was indicted for attempted especially aggravated robbery, and a Shelby County jury subsequently convicted the defendant as charged. In this appeal, the defendant alleges that the evidence is insufficient to sustain his conviction. We affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and CORNELIA A. CLARK, Sp. J., joined.

J. C. McLin, Memphis, Tennessee, for the appellant, Albert Johnson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; William L. Gibbons, District Attorney General; and William D. Bond, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On February 11, 1998, Regis Manning, the victim, left his mother's residence on foot in route to his grandmother's residence at approximately 7:30 p.m. At approximately 7:45 p.m., three males approached him. As the victim passed the three, one of them, whom the victim later identified as the defendant, held a pistol on him and stated, "[g]ive me what you got." As the victim continued to walk, defendant inquired, "[y]ou think I'm playing?" The victim testified that although he did not recall hearing a gun discharge, he realized he had been shot in the hip. The victim, because he was physically unable to continue to his grandmother's home, walked to the nearby residence of Delores Davis, an acquaintance. Davis phoned 911 and summoned emergency personnel.

Officer Scott Gibson responded to the residence of Delores Davis. He stated that he briefly talked with the victim, and the victim was only able to generally describe the assailants as "three

male blacks about 18 to 20 years of age wearing dark clothing." The victim stated to him that he did not recognize the assailants.

The victim was hospitalized and released several hours later. The victim stated that although he did not immediately recognize the face of the assailant who pointed the pistol at him, he realized, while at the hospital, that he had "seen that face somewhere before."

The victim returned to school approximately one week later, and when he saw the defendant, a fellow student, he immediately recognized him as the assailant. Accordingly, the victim identified the defendant to the school's police officer. The officer placed the defendant in a conference room, where the victim re-identified him by looking through the conference room's peephole.

The victim testified that although it was dark when he was shot, he passed the defendant "right up under the street light." The victim explained that because he was in extreme pain when he was first asked to describe the assailants, he was not thinking about having seen the assailant previously.

Jonathan Todd Hickman, a Department of Children's Services worker, testified that he met with the defendant and the defendant's uncle, Joel Johnson, on February 11, 1998, for the purpose of drafting authorization letters so the defendant could enter the Job Corps. Hickman testified that he arrived at the residence of Joel Johnson, where the defendant was staying, sometime after 5:30 p.m. Hickman stated that he handwrote three letters and left them with the defendant and Joel Johnson, who were to give the letters to the defendant's aunt, June Pettis-Pryor, to type. Hickman further testified that he left the residence at approximately 6:45 p.m.

Joel Johnson, the defendant's uncle, corroborated Hickman's testimony. He further testified that he talked by phone to his sister, June Pettis-Pryor, in the defendant's presence at approximately 7:45 p.m., and the call lasted 15 or 20 minutes. Additionally, Johnson stated that the defendant did not leave the residence at or after 7:45 p.m. Johnson testified that although the defendant was scheduled to leave for the Job Corps on February 13th, the defendant changed his mind and decided to stay with him.

June Pettis-Pryor, the defendant's aunt, testified that she arrived at her residence at around 7:45 p.m. on February 11th. Her daughter immediately informed her that Joel Johnson and the defendant had called. She returned their call promptly and spoke with both the defendant and Joel Johnson. Pettis-Pryor stated that their conversation lasted approximately 20 minutes, until about 8:00 p.m. She further testified that Joel Johnson's residence was over two miles from the crime scene; the defendant possessed no vehicle or driver's license; and Joel Johnson possessed no vehicle.

The defendant testified at trial that he arrived at Joel Johnson's residence, where he was then residing, at 2:40 p.m. on February 11th. He stated that Hickman arrived at approximately 5:30 p.m. and left around 6:30 or 6:45 p.m. The defendant further stated that he phoned Pettis-Pryor about 7:30 p.m. and left a message for her to call him. He stated that Pettis-Pryor returned his call within

10 to 15 minutes, and the conversation lasted 15 to 20 minutes.  The defendant stated that neither he nor Joel Johnson had access to a vehicle on February 11th.  The defendant further stated that it would take 30 to 40 minutes to walk to the crime scene from the residence.  He denied any involvement in the crime.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence was insufficient to establish that he was the perpetrator of the attempted especially aggravated robbery.  We respectfully disagree.

### A.  Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).  In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

### B.  Analysis

The victim testified that he saw the face of the assailant who held the gun on him and recognized the defendant at school.  The victim testified at trial that there was "no question" that the defendant was the person who held him at gunpoint.

The defendant's challenge to the sufficiency of the evidence relates only to identity; namely, that the state failed to prove the person who attempted to rob the victim was, in fact, the defendant. However, the question of identification of the defendant as the person who committed the offense is a question for the jury, and the victim's identification alone is sufficient to support a conviction. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).  Although the defendant offered alibi witnesses, consisting of Joel Johnson (his uncle) and June Pettis-Pryor (his aunt), "[t]he defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses in support of that defense, and of the weight to be given their testimony." State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982) (citation omitted).  This was a classic case in which it was the jury's responsibility to determine credibility.  The jury was within its authority

to disbelieve the defendant's alibi witnesses and accredit the testimony of the victim. Thus, the evidence is sufficient to sustain the defendant's conviction.

## APPOINTMENT OF COUNSEL

We take notice that appointed counsel for the defendant is presently a sitting judge on the Criminal Court for Shelby County, having assumed judicial office subsequent to the initiation of this appeal. It appears all filings by counsel were within 180 days of counsel's assuming judicial office; however, we are presently beyond the 180-day limitation. *See* Tenn. Sup. Ct. R. 10, Code of Judicial Conduct, Cannon 4G (providing that a judge may "in no event [practice law] longer than 180 days after assuming office"). This court will, therefore, by separate order appoint other counsel to file an Application for Permission to Appeal in the Tennessee Supreme Court, or, in the alternative, fully comply with the provisions of Tenn. R. Sup. Ct. R. 14.

## CONCLUSION

Based upon the foregoing, we conclude the proof was sufficient to sustain the defendant's conviction of attempted especially aggravated robbery. Thus, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE