IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2002

## STATE OF TENNESSEE v. CYNTHIA C. WARREN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-11757     Bernie Weinman, Judge**

---

**No. W2000-02261-CCA-R3-CD - Filed March 14, 2002**

---

A Shelby County jury found the defendant guilty of driving under the influence.  In this appeal, the defendant alleges (1) the evidence was insufficient to sustain her conviction; (2) the trial judge erroneously allowed the arresting officer to opine the defendant's blood alcohol level was greater than .10%; and (3) the trial court erroneously failed to charge adult driving while impaired as a lesser-included offense of DUI.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

A.C. Wharton, Jr., Public Defender; and Karen L. Massey (at trial) and W. Mark Ward (on appeal), Assistant District Public Defenders, for the appellant, Cynthia C. Warren.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy L. Carnesale, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Millington Police Officer Francis Cherry testified he was patrolling on March 19, 1999.  At approximately midnight, Officer Cherry observed the defendant's vehicle make two turns without an activated turn signal.  Officer Cherry initiated his cruiser's emergency lighting and stopped the vehicle.  He smelled alcohol when the defendant lowered her window, and the defendant "fumbled" for her driver's license.  Officer Cherry further testified that the defendant's speech was "slurred," and when he ordered her out of the vehicle, she "staggered" toward him.  Officer Cherry took her into custody and transported her to the station and administered field sobriety tests.

Officer Cherry testified the defendant's speech remained slurred after they arrived at the station; when he administered the "walk and turn," "one-legged stand," "balance," and "finger to nose" sobriety tests, she failed each test; she "almost fell down" when she turned during the "walk and turn" test; her pants were wet and smelled of alcohol; she experienced swings in her emotions - "one minute laughing . . . [t]he next minute crying;" she refused to submit to a blood alcohol test. Officer Cherry opined the defendant was under the influence of an intoxicant.

Luke Winsler, the defendant's boyfriend, testified that on the day the defendant was arrested, he was in his "regular hangout," "The Hideaway" bar, "getting drunk." He further testified that for seven hours he had been drinking on a half gallon of straight Kentucky bourbon over ice, his regular brew, when the defendant arrived between 11:00 p.m. and midnight. He stated that after his "pinkie finger" caught the "pretty stout" glass of straight bourbon which spilled all over the defendant, the defendant left to change clothes. Winsler conceded he was "pretty toasted" as he "always [was] on weekends." The experienced Winsler bragged, "I've been known to drink a whole half a gallon in one night."

Bonnie Conklin, the bartender, testified Winsler, a former regular at The Hideaway but presently "barred," was in a "fighting mood" and had been "drunk all day" when the defendant arrived at approximately 11:00 p.m.[1] She said the defendant had worked a double shift that day; she ordered a Dr. Pepper soda; she did not drink any alcohol; her speech was not slurred; she had stitches in her eye from surgery; and Winsler purposively threw his drink on her, "drench[ing]" her with alcohol.

The defendant testified she stopped at the bar to pick up Winsler after working a double shift. She further stated she ordered a Dr. Pepper soda, did not consume alcohol, and when Winsler accidentally spilled his drink on her, she left to go home to change clothes. In route, the officer pulled her over; he "acted like a drill sergeant;" he "holler[ed];" and when she asked that he cease shining lights in her eyes due to her recent eye surgery, he shined his flashlight in her eyes and stated that she "had no damn stitches in [her] eye." She conceded she had difficulty taking her license out of its holder; she "copped an attitude" with him after he shined the light; and she used profanity.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence is insufficient to sustain her conviction. We respectfully disagree.

---

[1] According to Conklin, Winsler's "[f]ighting, arguing, drinking [and getting into] the manager's equipment, mainly for the karoke," led to his disbarment from The Hideaway.

## A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

## B. Analysis

Officer Cherry testified the defendant's speech was slurred; she staggered when she walked; she experienced swings in her emotions; she failed each of the four field sobriety tests conducted at the station; she refused the breath test; and she appeared to be under the influence of alcohol. Although Bonnie Conklin, the bartender, testified she did not personally see the defendant drink alcohol that evening, and the defendant testified she had not consumed alcohol, it was within the jury's province to determine Officer Cherry's testimony was more credible. *See generally* State v. Oody, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991) (the credibility of the witnesses is entrusted to the sound discretion of the jury as the trier of fact). The evidence was more than sufficient to support the conviction.

## II. BLOOD ALCOHOL LEVEL TESTIMONY

The defendant alleges the trial court improperly allowed Officer Cherry to give an expert opinion regarding her blood alcohol level. Specifically, the testimony she challenges is as follows:

Question: Based on your experience and what you observed of her driving, her speech, and everything, did you form an opinion as to whether or not she was under the influence of alcohol?

Answer: Based on the field sobriety tests, her behavior, her physical behavior, I formed an opinion, yes, ma'am, that she was driving under the influence of alcohol and a point system assessed for failing the tests lent us to be able to determine whether they are over the legal limit or under the legal limit. In this case, I determined she was over the legal limit of .10.

Although the defendant argues on appeal that the officer's response concerning the defendant's "being over the legal limit of .10" constitutes improper expert testimony, she failed to lodge an objection at trial and failed to include this issue in her motion for new trial. By failing to

-3-

make a contemporaneous objection to testimony, a defendant waives appellate consideration of the issue. *See* <u>State v. Thompson</u>, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Furthermore, the defendant has waived this issue by failing to include it in her motion for new trial. *See* Tenn. R. App. P. 3(e); *see* <u>State v. Walker</u>, 910 S.W.2d 381, 386 (Tenn. 1995). Although we agree the officer's opinion that the defendant's blood alcohol level was over .10% was improperly admitted, we are unable to find plain error justifying a new trial. *See* Tenn. R. App. P. 52(b). In light of the other evidence, we are unable to conclude that consideration of the error is "necessary to do substantial justice." *See* <u>State v. Smith</u>, 24 S.W.3d 274, 282 (Tenn. 2000) (noting this is a requirement in order to find plain error). This issue is waived.

### III. LESSER-INCLUDED OFFENSE

The third issue raised by the defendant is whether the trial court erred in failing to charge the jury as to adult driving while impaired as a lesser-included offense of driving under the influence.

This court has previously concluded that adult driving while impaired is not a lesser-included offense of DUI pursuant to the tests set forth in <u>State v. Burns</u>, 6 S.W.3d 453, 466-67 (Tenn. 1999). *See* <u>State v. Harold W. Humphreys</u>, No. M2001-00333-CCA-R3-CD, 2001 WL 844400, at *9 (Tenn. Crim. App. July 26, 2001, at Nashville), *perm. to app. denied* (Tenn. 2001); *see also* <u>State v. Robert G. Bean</u>, No. M2000-02797-CCA-R3-CD, 2001 WL 1089760, at *6 (Tenn. Crim. App. Sept. 18, 2001, at Nashville); <u>State v. Donald Lee Reid</u>, No. M2000-02026-CCA-R3-CD, 2001 WL 1028815, at *5 (Tenn. Crim. App. Sept. 7. 2001, at Nashville). We see no reason to deviate from theses holdings. This issue is without merit.

### CONCLUSION

Based on the aforementioned, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-4-