# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2006

## STATE OF TENNESSEE v. ROBERT BARNETT

**Appeal from the Criminal Court for Shelby County**
**No. 04-01699      W. Mark Ward, Judge**

---

**No. W2005-02681-CCA-R3-CD - Filed January 10, 2007**

---

In this case appealed by Defendant Robert Barnett from the Criminal Court of Shelby County, we review the sufficiency of the evidence convicting the defendant of theft of property valued between $1,000 and $10,000 and aggravated burglary. We find the evidence sufficient and affirm the judgments.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Robert Wilson Jones, District Public Defender; and Brent Walker and Garland Erguden, Assistant District Public Defenders, for the Appellant, Robert Barnett.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A jury convicted the defendant of one count of theft of property worth $1,000 or more but less than $10,000 and one count of aggravated burglary. For the aggravated burglary count, he was sentenced to eight years in the Department of Correction at 35 percent. This sentence was to be served concurrently with his seven-year Department of Correction sentence for the theft conviction and consecutively to the sentence in another case.

The events giving rise to this appeal occurred on the evening of June 14, 2004, at the Super 8 Motel located on Macon Cove Road in Shelby County. Viewed in the light most favorable to the State, *see State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985), the proof at trial showed that.

Don Isbell and his fiancee, Kimberly Reeves,[1] rented a room at the Super 8 Motel prior to their 7:00 a.m. airplane flight from Memphis to Las Vegas. The couple planned to marry in Las Vegas on June 15, the next day. They arrived at the Super 8 Motel at approximately 6:00 p.m. and carried their three black bags of various sizes into their room located on the first floor of the three-story motel. Their room was located near the front desk, and they had to enter the room from the interior of the building. Only the room's window, which faced the rear parking lot, directly accessed the outside of the building.

Mr. Isbell testified that their bags contained various clothing and hygiene items, as well as two cameras, one being digital, wedding bands, other jewelry, and plane tickets. He testified that the personal items were worth approximately $1,500 and that the plane tickets cost $1,000.

Mr. Isbell testified that shortly after arriving, the couple left the motel for Wolfchase Mall. While at the mall, he and Ms. Reeves had their room keys with them. After watching a movie, the couple returned to their motel room around 9:30 p.m. When Mr. Isbell opened the door, he noticed that the room felt cold, so he walked to the window "to let some warmer air in." He then observed that the window screen had been removed, and Ms. Reeves noticed that their three bags were missing. Mr. Isbell notified the front desk clerk that their bags were missing, and the clerk telephoned the police.

Mr. Isbell testified that the officer arrived within three to five minutes of the call, and he described the bags for the officer, who "immediately left." After some time passed, the same officer came back to the motel and asked for a more detailed description of the stolen property. Mr. Isbell described the digital camera, including pictures already contained in the camera's memory, and the wedding bands, including the insignia on Ms. Reeves's band. The officer then took Mr. Isbell to the nearby Econo Lodge on Sycamore View Road, where Mr. Isbell identified several items and informed the officers that a knife and screwdriver that he saw did not belong to him or Ms. Reeves. Then he and Ms. Reeves accompanied officers to the police station and remained at the police station while the officers photographed their property. The officers returned their property, and they left the police station around 4:00 or 5:00 a.m. in time to make their 7:00 a.m. flight.

Memphis Police Department Officer Kenneth Gibbs testified that he was working the Northeast precinct on June 14, 2004. He received a call reporting a burglary at the Super 8 Motel while he was driving south on Sycamore View Road. In route to the motel, Officer Gibbs observed a black male walking northbound on Sycamore View Road carrying "three black canvas-type bags." Officer Gibbs testified that the man had already walked under the Interstate 40 overpass and that due to the patrol car's headlights and surrounding street lights, the man was in "plain view" walking on the sidewalk.

---

[1]Mr. Isbell and Ms. Reeves were married shortly after the incident, and they were still married at the time of trial. Because the incident occurred prior to their marriage, we will refer to Ms. Reeves as Ms. Reeves instead of Ms. Isbell.

Once Officer Gibbs arrived at the Super 8 Motel, Mr. Isbell described the three black bags taken from his and Ms. Reeves's room. Officer Gibbs testified that immediately after realizing that he had just seen a man carrying three black bags, he broadcasted the man's description and direction of travel on the police radio. He described the man as "a male black, approximately six foot tall, wearing dark clothing, carrying the three black bags." Officer Gibbs then left the motel in search of the suspect.

Officer Gibbs testified that his partner, Officer Hickman, advised him that he had found and temporarily detained a person fitting that description at the Sycamore View Road Econo Lodge, which, according to Officer Gibbs's testimony, is located approximately one-half mile from the Macon Cove Road Super 8 Motel. Officer Gibbs testified that the detained suspect was the man who he previously saw walking northbound on Sycamore View Road, and Officer Gibbs identified this man as the defendant. Officer Gibbs also testified that the defendant gave him permission to search his person, and he found a knife, a screwdriver, wedding rings, rings, a pendant, fingernail polish, and a five dollar bill.

Officer Gibbs then returned to the Super 8 Motel and requested that Mr. Isbell and Ms. Reeves follow him to the Econo Lodge to identify their property. While at the Super 8 Motel, Officer Gibbs noticed that Mr. Isbell's and Ms. Reeves's room window screen had been pried loose; it was lying on the gravel outside the room. He also noticed scratches on the window where it had been pried open.

On cross-examination, Officer Gibbs testified that he received the call around 10:00 p.m. and that he was driving 35 to 40 miles per hour when he saw the defendant "walking casually" north with the three bags. He also testified that he received the defendant's permission to search his person and that the three bags were already open when he arrived at the Econo Lodge. In addition, he testified that the affidavit of complaint contained a mistake. It should have read that the defendant was walking northbound instead of "westbound." Finally, he admitted that he was not at the scene when someone broke into the room, and on re-cross examination, he testified that he did not see anyone else out that night.

Former Memphis Police Department Officer James Alex Hickman, who now works for the Metropolitan Nashville Police Department, testified that on June 14, 2004, he was patrolling the area near the Super 8 Motel. He received Officer Gibbs's description of the defendant and began searching the surrounding area. Officer Hickman testified that about one or two minutes after receiving Officer Gibbs's description, he saw the defendant "crouched down looking through some black duffle bags" in front of Sycamore View Road Econo Lodge room 121. He testified that one could walk from the Super 8 Motel to the Econo Lodge in approximately 5 to ten minutes and that the two motels were separated only by Interstate 40. Officer Hickman notified Officer Gibbs of the situation and exited his patrol car. He asked the defendant if the bags belonged to him, and the defendant replied that someone gave them to him. Officer Hickman then temporarily detained the defendant until Officer Gibbs arrived to further investigate.

On cross-examination, Officer Hickman explained that his weapon was holstered when he asked the defendant if he owned the bags. He admitted that the defendant did not run and complied with his instructions. Officer Hickman also testified that he received the description at approximately 10:30 p.m.

The State's final witness was Pravin Parag, the Super 8 Motel's manager. He testified that he employed the defendant to help him clean the motel rooms and maintain the grounds and that the defendant had been living at the motel for approximately one year. On a typical day, he would give the defendant keys to dirty rooms in the morning, and after the defendant finished cleaning, the defendant would return the keys. Mr. Parag explained that he never had any prior problems with the defendant.

Mr. Parag also testified that the Isbell/Reeves room was room 119 and that it was the first room on the right-hand side of the hallway beyond the front desk. He explained that from the front desk, a person could see people enter and leave room 119 from the door. He also testified that a person could not see someone leave room 119 from the back window because it faced the rear parking lot.

After Mr. Parag's testimony, the State rested its case, and the defendant then exercised his right to testify. He testified that he had lived at the Super 8 Motel for two years and that he would clean rooms, clean the rooms' air conditioners, and perform maintenance tasks.

The defendant testified that on June 14, 2004, he cleaned a few rooms and about four or five air conditioners. He left work around 8:00 or 8:30 p.m. and went to Burger King to eat. He talked with a girlfriend at Burger King and then decided to go next door to Phillips 76 to buy beer. The defendant, however, changed his mind and decided to take the bus to Citgo, where another girlfriend worked, because that store's beer was on sale. The bus was behind schedule, so the defendant decided to walk to Citgo. He testified that he crossed the street near Exxon and spoke with a friend for some time before continuing on Sycamore View Road to Citgo, located beside the Econo Lodge. The defendant testified that Citgo was on a different side of Interstate 40 than Super 8 Motel.[2] We discern from the record, it takes about 17 or 18 minutes to walk from Exxon to Citgo.

When the defendant arrived at Citgo, he discovered that his friend was not working and that the store had sold out of beer. After walking out of the store, the defendant testified that a man wearing a hat yelled at him from behind the store. The defendant said that the man asked him if he wanted to buy a camera for $30. The man told the defendant that he had the camera in a bag behind Citgo's dumpster. The defendant walked behind the dumpster to inspect the camera, and

---

[2]According to Exhibit 5, a map of the area drawn by the defendant, Sycamore View Road runs perpendicular to Macon Cove Road. The Burger King, Exxon, Citgo, and Econo Lodge are located on Sycamore View Road, and the Super 8 Motel is located on Macon Cove Road. Interstate 40 also runs perpendicular to Sycamore View Road, dividing the road at one point. Macon Cove Road, and thus the Super 8 Motel, Exxon, and Burger King lie on one side of Interstate 40, and the Econo Lodge and Citgo lie on the other side of Interstate 40.

he offered the man $15 for the camera and the bag. The man took the money because, according to the defendant, he needed it to buy drugs.

The defendant then went through the bag and found the rings. He testified that once he found the rings, he realized that the man had sold him "hot stuff." The defendant said that he started thinking about what he was going to do with the property because he was on probation and knew that he would get in trouble. He walked to the Econo Lodge, passing a police car with its lights on. The defendant testified that he sat down in front of a room and started praying. He testified that he felt badly because someone was missing his or her property, and "it [was] like [he] was waiting on the police."

The defendant also testified that Office Hickman then shined his lights on him and pulled his gun. The defendant testified, "[T]hat's when I started going in my pocket letting him know what I had and everything." The defendant also testified that Officer Hickman and Office Gibbs placed him in the police car, he saw Mr. Isbell identify his property, and he was glad that Mr. Isbell received his property back.

In addition, the defendant testified that he did not intend to deprive Mr. Isbell of his property, that he did not pull the screen off of the window at the Super 8 Motel, and that he did not steal the bags. The defendant further testified that he was not the person walking under the Interstate 40 overpass because he did not have possession of the bags at that time.

Moreover, the defendant claimed that the officers were trying to frame him because he threatened to file a lawsuit against the police department for a prior incident involving "Officer Gibbs' partner," who we surmise from the record to be Officer Hickman. According to the defendant, Officer Hickman responded to a call at the Super 8 Motel where someone had "snuck into a room," and he was "not supposed to be in the room." The defendant testified that this may have been the same man who sold him Mr. Isbell's property. Officer Hickman then accused the defendant of giving the man access to the room. The defendant testified that Officer Hickman grabbed him by the collar, and he fell down the steps on their way to speak with the manager. The defendant testified that Officer Hickman then kicked him, fracturing his neck.

The defendant testified that because of this incident, the officers were trying to frame him. He testified that at the time of his arrest, the rings, money, and fingernail polish were in his pockets, but the screwdriver and knife were not. He testified that he had never before seen the screwdriver or the knife.

On cross-examination, the defendant testified that he did not see Mr. Isbell and Ms. Reeves check into the motel and that he did not return to the motel or to his room after he left work. He testified that when he bought the bags, there were only two bags, and one was inside of another. He admitted that a digital camera was worth more than $15. The defendant did admit that he was going to keep the rings after he paid for them. He stated that he did not know to whom to return them after he realized that they were stolen.

The defendant testified that when first questioned by Officer Hickman, he told him that he had purchased the bags, but he failed to tell him that he had bought them from the same man involved in the prior incident. The defendant further testified that the screwdriver did not belong to him, and he admitted that a screwdriver could be used for prying off a window screen. Finally, the defendant testified that it was a coincidence that he worked at the motel where the engaged couple stayed and that he was found with their bags.

After the defendant's testimony, the defense rested its case.

In challenging the evidence presented against him, the defendant points to the meagerness of the evidence.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*. at 835.

These rules apply to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654. Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973), an accused may be convicted exclusively on circumstantial evidence only when the facts and circumstances are so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Id*. at 484, 470 S.W.2d at 613.

A. Theft

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2003). In the present case the defendant was convicted of a Class D felony theft offense. *See id*. § 39-14-105(3) (establishing as a Class D felony a theft of property

valued at $1,000 or more but less than $10,000).

Upon our review, we conclude that the circumstantial evidence, in the light most favorable to the State, permits no other reasonable inference except that the defendant exercised control over the property of Mr. Isbell and Ms. Reeves, intending to deprive the owners of the property and without the effective consent of the owners. The defendant had the bags in his actual possession, and he had the rings and other property in his pockets. He did not have Mr. Isbell's or Ms. Reeves's permission to exercise control over the property. The defendant testified that after he paid for the property, he was going to keep it. Furthermore, he stated that he did not know to whom to return it even had he been so inclined. Therefore, the jury could have found the essential elements of theft beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 324, 99 S. Ct. at 2791-92; *Winters*, 137 S.W.3d at 654.

B. Aggravated Burglary

One commits burglary "who, without the effective consent of the property owner. . . [e]nters a building and commits or attempts to commit a felony, theft or assault." T.C.A. § 39-14-402(a)(3) (2003). Burglary becomes aggravated when the building is a habitation. *Id.* § 39-14-403(a). A "habitation" is defined as "any structure, including buildings, modular units, motor homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." *Id.* § 39-14-401(1)(A). For purposes of the burglary statutes, an "owner" refers to "a person in lawful possession of property, whether the possession is actual or constructive." *Id.* § 39-14-401(3). The definition of "owner" "does not include a person, who is restrained from the property or habitation by a valid court order or order of protection other than an ex parte order of protection, obtained by the person maintaining residence on the property." *Id.* Notably, to convict a defendant of burglary, the State is not required to offer a witness who actually saw the defendant break and enter the burglarized premises. *See State v. Robert Fluellen*, No. W2005-01155-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Feb. 7, 2006).

The State presented circumstantial evidence that the defendant had access to the rooms at Super 8 Motel, that Officer Gibbs saw the defendant walking with the bags from the direction of Super 8 Motel to the location where Officer Hickman found him, that the time when Officer Gibbs saw the defendant with the bags to the time he was found was very short, that the defendant possessed the stolen property and a screwdriver when found, and that the burgled room's window had been pried open with a screwdriver or similar tool. The defendant presented the alternative that he purchased the bags from a man who broke into the room. However, the jury heard this alternative and refused to believe it.

Officer Gibbs saw the defendant with the stolen bags walking away from the Super 8 Motel toward Citgo, where he claimed he purchased the bags. Within minutes of speaking to the victims, Officer Hickman found the defendant in possession of the stolen property at the Econo Lodge. The jury was entitled to infer the defendant's guilt based on the possession of stolen property shortly after the burglary of the Isbell/Reeves room. In Tennessee unsatisfactorily explained

possession of recently stolen goods, may be sufficient in and of itself to sustain a burglary conviction. *See Robert Fluellen*, slip op. at 5; *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995); *State v. Hamilton*, 628 S.W.3d 742, 746 (Tenn. Crim. App. 1981); *see also State v. Bill Teal*, No. 01C01-9611-CC-00482, slip op. at 11-12 (Tenn. Crim. App., Nashville, Dec. 10, 1997) (stating the jury could infer guilt of aggravated burglary because of defendant's possession of recently stolen property and finding the evidence sufficient to support the conviction).

Significantly, the defendant possessed a screwdriver, and Officer Gibbs testified that the burgled room's window had been pried open with a screwdriver. Considering this circumstantial evidence, a jury could draw no other reasonable inference save the guilt of the defendant, *see Crawford*, 225 Tenn. at 482, 470 S.W.2d at 612, and find all of the essential elements of aggravated burglary beyond a reasonable doubt, *see* Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 324, 99 S. Ct. at 2791-92; *Winters*, 137 S.W.3d at 654.

For the foregoing reasons, we find the evidence sufficient and affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE