**STATE of Tennessee, Appellee,**

v.

**Robert Edward TUTTLE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 20, 1995.

Philip A. Condra, District Public Defender, 12th Judicial District, Jasper, for appellant.

Charles W. Burson, Attorney General and Reporter, Kimbra Spann, Assistant Attorney General, Nashville, J. Michael Taylor, District Attorney General, and Steven M. Blount, Assistant District Attorney General, Winchester, for appellee.

### OPINION

WELLES, Judge.

This is an appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant was convicted on a jury verdict of the offense of aggravated burglary. For this Class C felony, he was sentenced as a Range II multiple offender to serve eight years in the Department of Correction. The sentence was ordered to be served consecutively to a sentence he was serving on an unrelated conviction. The Defendant appeals his conviction and the length and consecutive nature of his sentence. We affirm the judgment of the trial court.

The Defendant presents five issues for review in this appeal: (1) That the evidence presented at trial was insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt; (2) that the Defendant's rights to fundamental due process were violated because the State delayed from October 16, 1990 to May 6, 1992 in bringing formal charges against him; (3) that the trial judge erred in failing to suppress the introduction of the item taken in the burglary; (4) that the trial judge erred and denied the Defendant a fair and impartial trial by allowing the State to reopen and present additional evidence after the State had announced that it had concluded its case; and (5) that the trial court erred in ordering a mid-range, consecutive sentence for the offense.

The victim testified that on the morning of October 16, 1990, she left her home, which was located in a rural area of Franklin County, to go to Nashville. At that time, her shotgun was hanging in her living room on a gun rack. Late that afternoon, when she returned home, she found that her back door had been pried open. A crow bar was laying in her kitchen floor. Her shotgun was missing. She immediately called the Franklin County Sheriff's Department, and a deputy sheriff came to her house and made a report of the breaking and entering and the theft of the shotgun.

The victim was acquainted with the Defendant. The Defendant worked with her son and, in fact, had visited in her home on several occasions. The victim testified that the Defendant had called her on three occasions and asked her to tell the police that she

gave him permission to get the gun. She said she "told him I couldn't do that because he had tore our door open." The victim also testified that the Defendant said "I took the gun for one purpose and one purpose only, but I did not get to do what I wanted to do with the gun, and if you don't get the gun back, I'll see that Vicki will buy you another gun."

The State and the Defendant next announced that they had entered into a stipulation of facts, which was read to the jury and introduced as an exhibit as follows:

(1) Police officers seized one .20 gauge single shot Harrington and Richardson shotgun at approximately 5:20 p.m. on October 16, 1990. This item has remained in the custody of the authorities since that time.

(2) Police recovered this shotgun from a vehicle registered to Vicki Lancaster who was, at that time, Robert Tuttle's girlfriend. Robert Tuttle had used Mrs. Lancaster's car on numerous occasions to go to and from work and for other purposes.

(3) Robert Tuttle was present at the residence when the shotgun was seized.

The State next called a deputy sheriff from Coffee County who testified that he questioned the Defendant concerning the stolen gun and that the Defendant told him that he had gotten the shotgun from a boy to go squirrel hunting, but that the Defendant did not know the boy's name.

At this point, the State rested its case and the transcript reflects that the following exchange took place outside the presence of the jury:

MR. CONDRA: Your Honor, basically at this time we'd move for a judgment of acquittal on the indicted charge on the grounds that the State has not made out the essential element of any intent to commit a theft.

THE COURT: Well, let me ask Mr. Blount. The only evidence in this record of the Defendant's use of this vehicle is contained in this stipulation.

GENERAL BLOUNT: Judge, the stipulation contains that he had used the vehicle—

THE COURT: It didn't say when.

GENERAL BLOUNT: Sir?

THE COURT: It didn't say when. Absolutely no proof of when he was in possession of the vehicle.

GENERAL BLOUNT: Obviously—

THE COURT: And you're depending upon recent possession, the inference of recent possession.

GENERAL BLOUNT: Judge, if you will allow us, we can tell you details about that.

THE COURT: Don't tell me, I have to go by the evidence that's in this record.

GENERAL BLOUNT: I understand. Judge, number 3 says Mr. Tuttle was present at the residence when the shotgun was seized. The guns were seized from the vehicle. He was there when the vehicle— plus the stipulation that he had used this on numerous occasions.

THE COURT: Is the State prepared to rely on this stipulation to show the possession of the shotgun in the defendant?

The Court will take a five minute break.

GENERAL BLOUNT: Can I ask the Court a question before the Court takes a break?

THE COURT: If I can answer it.

GENERAL BLOUNT: If you'll allow us to go back on the record, we'll call another witness, Judge.

THE COURT: If you're asking to reopen, the Court will permit it.

GENERAL BLOUNT: I'd like that permission.

THE COURT: Then the motion would be premature and Mr. Condra could renew his motion.

GENERAL BLOUNT: And if the Court wants an explanation why we—

THE COURT: You don't have to make any explanation. If you want to re-open you may do so.

GENERAL BLOUNT: Yes, sir.

MR. CONDRA: Note our objections to his re-opening.

THE COURT: Yes, sir, overrule the objection.

Thereafter, the State called an additional Coffee County deputy sheriff who testified that he was investigating a separate crime and interviewed the Defendant at his place of employment on October 15, 1990. At that time, the Defendant was driving a 1982 Pontiac Bonneville registered to Vicki Lancaster, who was the Defendant's girlfriend. He stated that the next day, October 16, 1990, that he, other officers, and Vicki Lancaster went to the home of a friend of Ms. Lancaster's where Ms. Lancaster's 1982 Pontiac Bonneville was parked. The Defendant was in the residence. The stolen shotgun was laying across the front seat of Ms. Lancaster's automobile.

At this time, the State again rested its case. The defense offered no proof. The jury returned a verdict of guilty of aggravated burglary.

■ The Defendant first argues that his fundamental due process rights were violated by the delay in bringing charges against him. At the time this burglary was committed, the Defendant was a prime suspect in a homicide case in Coffee County. The burglary in Franklin County took place on October 16, 1990. On that same date, primarily as a result of the homicide investigation, the stolen shotgun was found in the automobile which the Defendant possessed at that time. The homicide in Coffee County had occurred some ten days prior to the burglary.

Although no evidence was presented directly on this point, the Defendant was apparently charged with first degree murder in Coffee County. This charge led to a conviction on a jury verdict of voluntary manslaughter on about April 23, 1992. Shortly thereafter, the District Attorney for Coffee County apparently asked the District Attorney for Franklin County to prosecute the Defendant for the burglary in Franklin County. The burglary indictment is dated May 6, 1992. The Defendant argues that because the Coffee County District Attorney did not bring this matter to the attention of the Franklin County District Attorney and request the prosecution until after he obtained a disappointing result in the homicide case, that this burglary charge was intentionally delayed in order to have a "fallback position" and that, therefore, this was a willful delay and violated the Defendant's rights to due process of law.

We conclude that the Defendant's argument has no merit. First of all, there is nothing in this record to in any way indicate that the homicide in Coffee County was connected to or related to the burglary in the case *sub judice* in Franklin County. Secondly, the two crimes took place in separate counties and in separate judicial districts. Certainly, Rule 8 of the Tennessee Rules of Criminal Procedure concerning joinder of offenses is inapplicable.

■ In order for the Defendant to establish a violation of his due process rights caused by a delay of presenting charges against him, the evidence must show three things: (1) That there was a delay; (2) that the Defendant was prejudiced by the delay; and (3) that the State intentionally delayed the prosecution in order to gain a tactical advantage. *State v. Paul Ray Jones,* No. 01–C–01–9212–CR–00384, Davidson County, slip. op. at 3 (Tenn.Crim.App., Nashville, filed Sept. 9, 1993) (citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)); *State v. Dykes,* 803 S.W.2d 250 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1990); *State v. Baker,* 614 S.W.2d 352 (Tenn.1981).

In the case *sub judice,* there was a delay of some nineteen months. However, the evidence does not show that the Defendant was in any way prejudiced or that the State intentionally delayed the prosecution in order

to gain a tactical advantage. These crimes were unrelated and occurred in separate counties in separate judicial districts. If the Defendant had been promptly indicted for the burglary, we cannot say that it would have been unreasonable to proceed with the charges of first degree murder prior to proceeding with the trial of the Defendant for burglary. There is no evidence in the record to suggest that the two District Attorneys General involved discussed or arrived at a tactical plan in the prosecution of these two charges. In addition to this, it is apparent that the homicide occurred prior to the burglary. The Defendant has shown no prejudice from the delay in bringing the burglary charges against him, and we certainly cannot conclude that it violated his due process rights to have the homicide charges tried first. This issue is without merit.

■ The Defendant next argues that the trial court erred in denying his motion to suppress the introduction of the shotgun into evidence. He argues that the shotgun was discovered as the result of an illegal search of his girlfriend's automobile. We conclude that the Defendant's argument is without merit and that the evidence was admissible for several reasons. First of all, even though the automobile had supposedly been loaned to the Defendant, its lawful owner gave permission for the officers to search. Secondly, the shotgun was discovered by the officers in plain view in the front seat of the automobile. The owner of the property where the automobile was parked had given the officers permission to enter upon her property to look for the automobile and/or the Defendant. In fact, the officers at that time had a warrant for the Defendant's arrest for unlawfully retaining the automobile.

We are aware that at the time the motion to suppress was heard, the owner of the automobile, the Defendant's girlfriend, had married the Defendant. There was substantial conflict between her testimony and that of the law enforcement officers concerning the events which led to the discovery of the automobile and the weapon located in the front seat. The trial court specifically credited the testimony of the law enforcement officers and discredited the Defendant's wife's testimony. We also agree with the trial court that the Defendant lacked standing to challenge the validity of the search.

■ A trial judge's factual findings on a motion to suppress have the weight of a jury verdict and are conclusive on appeal unless the evidence clearly preponderates against them. *State v. Woods,* 806 S.W.2d 205, 208 (Tenn.Crim.App.1990), *perm to appeal denied, id.* (Tenn.1991), *cert. denied,* 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (U.S. 1992); *State v. Jones,* 802 S.W.2d 221, 223 (Tenn.Crim.App.1990), *perm to appeal dismissed, id.* (Tenn.1991).

■ The Defendant next argues that he was denied a fair and impartial trial because the trial court allowed the State to reopen its proof after the State had rested and the Defendant moved for a judgment of acquittal. The transcript of the proceedings on this point is quoted herein above.

■ The trial judge has wide discretion in determining whether or not to grant permission to reopen the case by either the State or the Defendant. *Oliver v. State,* 208 Tenn. 692, 697, 348 S.W.2d 325, 327 (Tenn.1961). The decision of the trial judge will not be set aside unless there is a showing that an injustice has been done. *State v. Bell,* 690 S.W.2d 879, 882 (Tenn.Crim.App.), *perm to appeal denied, id.* (Tenn.1985).

In the case *sub judice,* we are unable to conclude either that the trial judge abused his discretion or that an injustice was done to the Defendant. Even if the trial judge erred on this issue, we conclude that the error was harmless. We believe that the evidence was sufficient to sustain the Defendant's conviction even without that testimony presented after proof was reopened. This issue is without merit.

The Defendant next argues that the evidence presented at trial was insufficient to support the verdict of guilty.

■ When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence presented during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

■ In determining the sufficiency of the evidence, this court does not reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). This court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod*, 754 S.W.2d 627, 632 (Tenn.Crim.App.1988).

■ Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn.Crim. App.1987). In *State v. Grace*, 493 S.W.2d 474 (Tenn.1973), the Tennessee Supreme Court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *Id.* at 476.

■ Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *id.*, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *Matthews*, 805 S.W.2d at 780.

■ We have no hesitancy in determining that sufficient evidence was presented at trial to support the jury's verdict of guilty. The stolen shotgun was found in the constructive possession of the Defendant on the same day that the victim's home was burglarized. The victim herself testified that the Defendant had told her on three separate occasions that he had taken the gun. He tried to persuade the victim to tell the police that he had her permission to take the gun.

■ Possession of recently stolen goods gives rise to an inference that the possessor has stolen them. *Bush v. State*, 541 S.W.2d 391, 394 (Tenn.1976). Possession of recently stolen goods may also be sufficient evidence to sustain a conviction for burglary. *Brown v. State*, 489 S.W.2d 855, 856 (Tenn.Crim. App.1972), *cert. denied, id.* (Tenn.1973). We conclude that the evidence is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e).

The Defendant next argues that the trial court erred in imposing a mid-range sentence on him and by ordering the sentence served consecutively to the sentence the Defendant received for the manslaughter conviction in Coffee County.

■ When there is a challenge to the length, range or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). The Sentencing Commis-

sion Comments provide that the burden is on the appellant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. *State v. Smith*, 735 S.W.2d 859, 863 (Tenn.Crim.App.1987); Tenn.Code Ann. §§ 40–35–102, –103 and –210.

The presentence report reflects that at the time of sentencing the Defendant was thirty-eight years old and was married. He had children by prior relationships. The Defendant reported completing the eleventh grade in California in 1972. He reported that he served briefly in the United States Army in 1972 but that he received an undesirable discharge after he went AWOL and was caught sniffing glue. He reported obtaining his GED while in prison in Minnesota in 1979 and again while in prison in California in 1980. He reported that he attended two semesters of college. The Defendant's work history is not good which is explained at least in part by his extensive criminal history.

The presentence report reflects that the Defendant's first conviction as an adult was for forgery at age eighteen in California in 1973. The presentence report reflects at least forty arrests subsequent to that first one. The report reflects at least twenty convictions for felonies and misdemeanors in Tennessee, California, Iowa, Minnesota, Wisconsin and Oregon. He has been incarcerated and on probation numerous times. He stipulated that he was a Range II multiple offender. At the time he committed the burglary in the case *sub judice*, the Defendant was on probation out of Coffee County, Tennessee and was apparently also on parole from a California conviction.

The sentence for a Class C felony in Range II is from six to ten years. The trial court sentenced the Defendant to eight years. While the trial judge did not articulate specific reasons for ordering the sentence to be served consecutively to the prior sentence, it is clear from this record that the Defendant is an offender whose record of criminal activity is extensive and that the Defendant was being sentenced for an offense committed while on probation. Tenn. Code Ann. § 40–35–115(b)(2) and (6). These factors authorize the trial court to consider consecutive sentences pursuant to Rule 32(c)(2) of the Tennessee Rules of Criminal Procedure.

Based upon a review of this entire record, we are unable to conclude that the trial judge erred or abused his discretion in sentencing the Defendant.

The judgment of the trial court is affirmed.

WADE and SUMMERS, JJ., concur.