# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 3, 2013

### STATE OF TENNESSEE v. JOSEPH SHANE POWELL

**Direct Appeal from the Circuit Court for Madison County**
**No. 11-24     Donald H. Allen, Judge**

**No. W2012-02657-CCA-R3-CD  - Filed February 27, 2014**

A Madison County Grand Jury returned an indictment against Defendant, Joseph Shane Powell, charging him with promoting the manufacture of methamphetamine. Following a jury trial, Defendant was convicted as charged in the indictment. The trial court imposed a sentence of eight years as a Range II multiple offender. On appeal, Defendant argues that the evidence was insufficient to support his conviction. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and JEFFREY S. BIVINS, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Joseph Shane Powell.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Jerry Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

At approximately 6:00 p.m. on August 19, 2010, Investigator Byron Maxedon of the Jackson Madison County Metro Narcotics Unit initiated a traffic stop of a white PT Cruiser "for a window tint violation and a seatbelt violation." The driver of the vehicle, Tammy Barton, pulled into the parking lot of a Maverick gas station. Investigator Maxedon asked for

Ms. Barton's driver's license and for permission to search the vehicle, but she would not give consent to search. Joseph Parker, Crystal Parker, Christina Wilde, Johnny Hemby, and Defendant were also in the vehicle. Mr. Hemby had died prior to the trial. Officer Jeremy Stines arrived on the scene with his K-9 partner Farrow. Officer Stines walked Farrow around the exterior of the PT Cruiser, and the dog alerted to the "presence of narcotics by the exterior of the vehicle."

Officer Stines and Investigator Maxedon searched the vehicle and found three unopened boxes of Walgreens' brand pseudoephedrine (Wal-Act) in the car. Investigator Maxedon testified that pseudoephedrine "is used as the primary ingredient in manufacturing methamphetamine." He said, "You can't have methamphetamine unless you have pseudoephedrine." Investigator Stines took statements from the occupants of the vehicle. Based on the information that Stines received, Defendant was charged with promoting the manufacture of methamphetamine.

Joseph Parker testified that he was living in Chester County on August 19, 2010, when Defendant and Ms. Barton stopped by his residence. He said Defendant indicated that "he knew a way we could get well." Mr. Parker explained that he was addicted to morphine at the time, and to "get well" meant using drugs. He then rode to Jackson with Defendant and Ms. Barton. Mr. Parker's wife, Crystal, was also in the vehicle along with Johnny Hemby, and Christina Wilde. There was a discussion on the way to Jackson about purchasing pseudoephedrine to exchange with someone named "Billy" for fifty dollars to buy Morphine. Mr. Parker knew that the pseudoephedrine would be used by "Billy" to make methamphetamine. Mr. Parker testified that either Defendant or Ms. Barton asked him to purchase pseudoephedrine, and he was taken to a Walgreens in Jackson where he purchased one box at the pharmacy. He said that they also stopped at two or three other Walgreens stores in Jackson. Mr. Parker testified that Defendant had arranged the transaction with "Billy," who worked at Save-A-Lot.

Christine Wilde testified that she was living in Chester County on August 19, 2010, with Joseph and Crystal Parker. On that day, she rode to Jackson with Tammy Barton, Defendant, the Parkers, and Johnny Hemby. Ms. Wilde testified that Defendant asked her to purchase a box of pseudoephedrine. Ms. Wilde explained that she was addicted to Morphine at the time and Defendant told her that he would sell the pseudoephedrine to someone to make methamphetamine, and she would "receive the money for the equivalent [sic] of [her] addiction at the time." She purchased the drug at a Walgreens store on North Highland Avenue and gave it to Defendant. Ms. Wilde testified that they stopped at two other Walgreens stores, and Joseph and Crystal Parker each purchased a box of pseudoephedrine.

Crystal Parker testified that she rode to Jackson with Defendant and Ms. Barton on August 19, 2010, to purchase pseudoephedrine. She also bought the drug at the Walgreens store on North Highland Avenue. When asked why she purchased the box of pseudoephedrine, Ms. Parker replied:

> Because [Defendant] was going to sell it to - - I'm not sure who he was for $50 per box so that we could have money. We were going to get some of that profit. We weren't going to get the whole amount, but we would get some money for that.

Ms. Parker specifically testified that Defendant instructed her to buy the drug. She said that they were supposed to meet a man in the parking lot of the Save-A-Lot factory who would buy the three boxes of pseudoephedrine. It was Ms. Parker's understanding that the man would be using the pseudoephedrine to make methamphetamine.

Tammy Barton testified that she had picked Defendant up on the morning of August 19, 2010. While at a friend's house, Ms. Barton and Defendant discussed going to Jackson to purchase pseudoephedrine. Later that day, they picked up Mr. and Mrs. Parker, Christina Wilde, and Mr. Hemby. Ms. Barton then drove everyone to Jackson, and they stopped at two different Walgreens stores in Jackson. She said that she told one of the individuals in the car what to buy at the Walgreens store. When asked how she knew what to tell the person to buy, Ms. Barton testified:

> [Defendant] told me. He give [sic] me a label off of a box. It was a label that was off of a box that we were both in the car and the person was in the back seat and there was a label off of a box and this person was directed to buy what this label was of the kind of Sudafed. That's what I remember of it.

Ms. Barton testified that when they were later pulled over, they were on the way to a Save-A-Lot parking lot to meet someone. Ms. Barton testified that she never heard Defendant tell anyone to purchase pseudoephedrine; however, he directed her where to meet the person to deliver the pseudoephedrine. She said that during one of the purchases at Walgreens by one of the other individuals, Defendant had gone inside a convenience store and purchased beer.

**II. Analysis**

*Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence for his conviction of promoting the manufacture of methamphetamine. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id*. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Tenn. Code Ann. 39-17-433 (a) provides that it is an offense "for a person to promote methamphetamine manufacture." More specifically:

A person promotes methamphetamine who:

(1) Sells, purchases, acquires, or delivers any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use [.]

Tenn. Code Ann. § 39-17-433(a)(1).

Viewing the evidence in a light most favorable to the State, the proof showed that on August 19, 2010, Defendant along with Joseph Parker, Crystal Parker, Christina Wilde, and Tammy Barton rode to Jackson for the purpose of purchasing pseudoephedrine to resell to someone named "Billy" to use in the manufacture of methamphetamine in exchange for $50 per box. Joseph Parker testified that either Defendant or Ms. Barton asked him to purchase pseudoephedrine, and he was driven to a Walgreens Store in Jackson where he purchased one box of the drug. Mr. Parker testified that Defendant had arranged the transaction with "Billy."

Christina Wilde testified that Defendant asked her to purchase a box of pseudoephedrine. She said that Defendant told her that he was going to sell the box of pseudoephedrine to someone to make methamphetamine, and she would receive a portion of the money to purchase morphine, a drug to which she was addicted. Crystal Parker also testified that Defendant instructed her to buy a box of pseudoephedrine from a Walgreens in Jackson so that he could sell it to someone else for the purpose of manufacturing methamphetamine. Ms. Parker said that she was supposed to receive a portion of the money from the drug sale. Tammy Barton testified that Defendant had given her a label from a box of pseudoephedrine so that she and others would know what to buy. Although Ms. Barton testified that she never heard Defendant tell anyone to purchase pseudoephedrine, he directed her to the parking lot of the Save-A-Lot factory to meet "Billy" and deliver the boxes of pseudoephedrine to him.

Although Defendant suggests that the credibility of the State's witnesses was suspect due to their drug addiction and previous criminal records, as stated above, the trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Tuttle*, 914 S.W.2d at 932.

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's conviction for promoting the manufacture of methamphetamine. Defendant is not entitled to relief on this issue.

For the foregoing reasons, the judgment of the trial court is affirmed

_____
THOMAS T. WOODALL, JUDGE