IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2014

**STATE OF TENNESSEE v. ANDREW JOSEPH ABORIZK**

**Appeal from the Criminal Court for Davidson County**
**No. 2011D2902    Cheryl A. Blackburn, Judge**

_____

**No. M2013-02835-CCA-R3-CD - Filed January 20, 2015**

_____

A Davidson County Grand Jury returned an indictment against Defendant, Andrew Joseph Aborizk, charging him with theft of property valued at more than $1,000 but less than $10,000. Following a jury trial , Defendant was convicted of theft of property valued at more than $500 but less than $1,000. The trial court imposed a sentence of two years as a Range One standard offender to be served on supervised probation. On appeal, Defendant argues that the evidence was insufficient to support his theft conviction because the State failed to prove identity of the perpetrator beyond a reasonable doubt. After a thorough review of the record, we affirm Defendant's conviction for theft of property valued at more than $500 but less than $1,000.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Andrew Joseph Aborizk.

Herbert H. Slatery, III, Attorney General and Reporter; David H. Findley, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

In March of 2011, Larry Kendall was living at 98 South Graycroft Avenue in Madison with his sister, Linda Kendall. The victim, George Hall, owned the house next door located

at 100 South Graycroft Avenue. At the time, the victim's house was being renovated due to a fire that occurred shortly after the victim had moved in.

On Saturday March 26, 2011, at approximately 11:30 a.m. to 12:00 p.m., Mr. Kendall walked outside to smoke a cigarette and noticed someone driving up the victim's driveway in a late-model "silver gray Pontiac," possibly a Grand Prix. The car was driven around to the back of the house. Mr. Kendall walked back inside the house and returned approximately thirty minutes later to smoke another cigarette. He noticed that the "car was turned around then headed out the driveway, but it was backed up to a [storage container]." Mr. Kendall testified that the victim had belongings stored in the container after the fire, and Mr. Kendall saw Defendant taking boxes out of the container and loading them into the trunk, back seat, and passenger seat of the car. Mr. Kendall recognized Defendant because he had previously seen Defendant at the victim's house on two or three occasions hauling scrap metal away from the property. Therefore, Mr. Kendall did not believe that it was unusual for Defendant to be at the victim's house on March 26, 2011. He did not know Defendant's name. Defendant waved at Mr. Kendall while he was loading the boxes, and Mr. Kendall waved back. Mr. Kendall testified that he could clearly see Defendant, and there was nothing blocking Mr. Kendall's view of Defendant. Defendant was wearing blue jeans, a "bluish green" jacket, and a "hat that was flat like the marines used to wear." Mr. Kendall then told his sister, Linda Kendall what he saw, and she began watching Defendant out her bedroom window. Mr. Kendall estimated that Defendant was at the victim's house for more than an hour. He said that Defendant filled up the car except for the driver's seat and drove away. Mr. Kendall had never previously seen Defendant in the silver or gray Pontiac.

Mr. Kendall saw police at the victim's storage container the following Monday, and he walked over and talked to the officers. He told them about the silver car and that he had previously seen Defendant on the property driving a white truck. At that time, Mr. Kendall realized that the lock to the storage container had been cut. Several days later, Detective James Bledsoe of the Metropolitan Nashville Police Department visited the Kendall residence and showed Mr. Kendall a photographic line-up. Mr. Kendall identified Defendant as the person that he saw taking boxes from the victim's storage container. Mr. Kendall testified at trial that he was "one hundred percent sure" that Defendant was the person he saw taking the victim's property on March 26, 2011.

Linda Kendall testified similarly to that of her brother, Larry Kendall. She watched Defendant through her bedroom window from her "power chair" on March 26, 2011. Ms. Kendall also estimated that Defendant spent approximately one hour loading boxes from the victim's storage container into a silver car. She noted that she had previously seen Defendant at the victim's house; however, Defendant was not wearing a hat at the time, and he drove a white truck. Ms. Kendall did not know Defendant's name. She testified that she could

clearly see Defendant loading the boxes into the car. Ms. Kendall testified that Detective James Bledsoe later came to her residence, and she identified Defendant from a photographic line-up. She also identified Defendant at trial.

The victim, George Hall, testified that on March 26, 2011, he was in the process of renovating his house located at 100 South Graycroft Avenue due to a fire that occurred on June 13, 2010. Through an ad on Craigslist, the victim contacted Defendant to remove scrap metal and debris from the property during the renovation. The victim noted that he did not pay Defendant to remove the items but that Defendant earned money from removing the scrap metal from the property and selling it. The victim estimated that Defendant made three to five trips hauling items away from the property. He confirmed that Defendant was no longer working for him on March 26, 2011, and that Defendant had made his last haul of debris six to eight months prior to the theft. The victim testified that he had always been present when Defendant hauled scrap items away from the house.

The victim testified that at the time of the theft he had two storage containers on his property. He said that the storage container in the back yard contained items that had been salvaged from the house as well as new items that the victim had purchased to go in the house. The victim testified that he always locked both storage containers with a padlock. He never gave Defendant permission to take anything from the storage containers.

The victim noted that he had stopped by his property on Graycroft Avenue on the morning of March 26, 2011. He either placed something in the back yard storage container or took something out and then made certain that the container was locked before he left. He did not notice anything unusual about the storage container. The victim testified that he pulled up to his house on Monday morning, March 28, 2011, and looked around the outside of his house and initially did not notice anything unusual. He retrieved his keys to unlock the storage container and noticed that the door was six to eight inches open. The victim opened the door the remainder of the way and saw that there were items missing from the storage container. He called police who arrived and took a report.

The victim testified that police attempted to lift fingerprints from the storage container. He later found the padlock to the container which had been damaged by what appeared to be some type of tool. The victim testified that his neighbor, Mr. Kendall, came over and told police what he observed. When Mr. Kendall described the man that he saw and the car that the man was driving, the victim had an idea that it was Defendant. The victim noted that on one occasion when Defendant was at the victim's house working, Defendant said, "my old lady has got to come by and see me." A woman later arrived driving a "silverish gray Pontiac Grand Prix." The victim noted that Defendant usually rode to his

house with "an older gentleman with kind of silvery white hair," and they would pick up items and leave.

The victim later spoke with Detective Bledsoe and gave him Defendant's full name and address. He also made a list of items that were stolen from the storage container, and he provided a receipt for items that he had recently purchased that were missing. The victim estimated that the value of the items stolen from the storage container was between three and four thousand dollars. The victim testified that he once owned a Pontiac Grand Prix and knew that the items taken from the storage container would fit inside the vehicle.

Detective James Bledsoe of the Metropolitan Nashville Police Department testified that he was assigned to investigate the theft in the present case. He met with the victim who provided him with several receipts for items that he had purchased which were missing. The victim also gave him a list of other missing items. Detective Bledsoe obtained Defendant's name from the victim and then prepared a photographic lineup with a total of six photographs including Defendant's photograph. On April 17, 2011, Detective Bledsoe drove to Larry and Linda Kendall's residence and showed them the lineup. They were each in a separate room when they viewed the photographs. Both Mr. and Ms. Kendall identified Defendant as the person they observed taking items from the victim's storage container. Mr. Kendall showed Detective Bledsoe where he was standing outside when he saw Defendant. Detective Bledsoe testified that there was a clear view of the storage container from where Mr. Kendall was standing.

Detective Bledsoe noted that Ms. Kendall was in a wheelchair and showed him the back bedroom window from which she observed Defendant taking items from the storage container. Detective Bledsoe testified that the window "would have almost been above where Larry Kendall was standing."

On cross-examination, Detective Bledsoe testified that he did not recover any of the stolen items in this case. He was unable to find a vehicle registered to Defendant, and he did not find anyone with a connection to the silver Grand Prix that Defendant was driving at the time of the theft. Detective Bledsoe testified that there was no physical evidence linking Defendant to the crime.

Lori Green testified that she was Defendant's fiancee and had lived with him for eight years. At the time of the offense in this case, Ms. Green was not employed, and Defendant was self-employed hauling junk and scrap metal. Ms. Green testified that Defendant was with her until approximately 3:30 p.m. on Saturday, March 26, 2011, when he left the house to go to Hermitage Recycling with Jesse King, Defendant's friend and business associate. She said that Mr. King had arrived at the house at approximately 10:30 a.m. from Franklin.

Ms. Green testified that Mr. King drove to their house to bring money for two air conditioning units that Defendant and Mr. King planned to buy and break down to sell for scrap metal. Ms. Green acknowledged that Defendant frequently borrowed money from Mr. King.

Ms. Green testified that Defendant and Mr. King used Mr. King's silver Ford F-150 truck for the business because Defendant did not have a vehicle. Ms. Green said that she drove a 2001 black Ford Thunderbird. She denied having ever owned a Grand Prix or any gray or silver vehicle. Ms. Green testified that she had been to the victim's property on one occasion to drop off Mr. King because Defendant was already there with the victim. She said that she was driving the black Thunderbird at the time. Ms. Green testified that she did not notice any new tools in Defendant's possession after March 26, 2011, and she said that he did not own a "flat-topped military style" hat.

On cross-examination, Ms. Green did not recall telling Detective Zoccola that Defendant was at home until sometime between 1:00 and 2:00 p.m. on March 26, 2011. She testified that Defendant and Mr. King both left to go to the "scrap yard," and they returned at approximately 4:00 to 4:30 p.m. that day.

Seventy-five-year-old Jesse King testified that he had known Defendant for approximately ten years, and they hauled scrap metal together. Mr. King said that he "mostly" drove Defendant around in Mr. King's truck. Mr. King testified that at the relevant time period, he drove a gray Ford F-150. Mr. King testified that he arrived at Defendant's house at approximately 10:30 a.m. on March 26, 2011. He said:

> [Defendant] called me on the way in and said he had some air conditioners to break down, and he needed to borrow a couple of dollars to finish paying the air conditioning people. So I told him I would loan him $23 I think it was to finish paying for them. And then the air conditioning people were still there when I got there. We paid them, and then we proceeded to break the air conditioners down.

Mr. King thought that he and Defendant left to go to Hermitage Recycling at approximately 2:00 to 2:30 p.m. He said that he was with Defendant for the entire day. Mr. King testified that he had never seen Ms. Green drive a silver Pontiac Grand Prix.

On cross-examination, Mr. King admitted that he did not remember if he accompanied Defendant to Hermitage Recycling on March 26, 2011. He recalled talking to Detective Zoccola and telling him that Defendant may have gone alone to the recycling center because Mr. King did not appear in any of the photographs from the business. Mr. King testified that

-5-

he told Detective Zoccola that Defendant arrived back at the residence at approximately 4:00 to 5:00 p.m. in Mr. King's truck.

Damon Hassell is the owner/manager of Hermitage Recycling, LLC. He testified that Defendant is one of his customers and that he saw Defendant approximately two to three times per week in 2011. Mr. Hassell testified that there are security cameras all over his property, and he photographs each transaction at the recycling center. Mr. Hassell identified pictures of Defendant signing for a check at 3:33 p.m. on March 26, 2011. He also identified a photograph of Defendant driving a truck and weighing in with what appeared to be parts from an air conditioner in the truck. The photograph was taken at 3:02 p.m. Mr. Hassell testified that another older gentleman was usually with Defendant; however, he was not with Defendant in the photographs.

On cross-examination, Mr. Hassell testified that customers at the recycling center are aware that they are being photographed and videoed. Customers also have to provide a driver's license and fingerprints on the check stub. Mr. King testified that the older man always got out of the truck and helped Defendant unload items, and the man also came inside while Defendant was being paid.

David Zoccola, an investigator with the District Attorney General's Office, testified that in January of 2012, he interviewed both Lori Green and Jesse King concerning the theft from the victim's storage container. Ms. Green told him that Defendant left their house on March 26, 2011, between 1:00 and 2:00 p.m. with Mr. King. Concerning his interview with Mr. King, Detective Zoccola testified:

> Basically when Mr. King got into my vehicle, I asked him some basic questions about the case. He was familiar with what I was talking about. And I asked him would he just basically start from the beginning of that day and work through it until everybody separated. And as we worked through the conversation, we got to the part where Mr. King originally said that he was with the defendant when he went to the scrap yard. And right after he made that statement he said, I think I went with him or I'm really not sure whether or not I went with him. So I accepted that, and we continued to talk and just try to figure out the steps and who was with who during the remainder of the day. And some five or six times during that conversation with Mr. King we went back to if, in fact, he was with the defendant when he went to the scrap yard. And as we worked toward the end of the conversation, Mr. King was making statements like, I was with him until he left to go to the scrap yard and I wasn't able to go home that evening until the defendant brought my truck back. So we referenced that three or four times. And then at the end I kind of

summarized what Mr. King had told me and repeated that at some point during the day the defendant left in the truck to go to the scrap yard. And he did not correct me and agreed with what I had said. So we basically touched on who was with who four or five times during that conversation.

## II. Analysis

### Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence for his conviction of theft of property valued at more than $500 but less than $1,000. More specifically, he contends that the State failed to "prove the key element of identity." When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id*. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

To support Defendant's conviction for theft of property valued at more than $500 but less than $1,000, the State was required to prove that Defendant violated Tennessee Code Annotated section 39-16-402, which states: "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

Defendant contends that the proof of his identity as the perpetrator, given the testimony of his alibi witnesses, was insufficient to support his conviction. The identity of the accused as the person who committed the offense for which he is on trial is a question of fact for the jury. *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). The identity of an accused may be established either by direct evidence, circumstantial evidence,

or a combination of the two. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

Viewing the evidence in a light most favorable to the State, the proof showed that Larry Kendall and his sister, Linda Kendall, both identified Defendant as the person that they saw on March 26, 2011, removing boxes from the victim's storage container and placing them in a gray or silver Pontiac Grand Prix. Both witnesses testified that they had a clear line of vision while they were watching Defendant. Mr. Kendall testified that he recognized Defendant because he had seen Defendant at the victim's house on previous occasions hauling scrap metal away from the property. Ms. Kendall had also seen Defendant at the victim's house on previous occasions. Mr. and Ms. Kendall both identified Defendant from a photographic lineup, and they identified him at trial. Mr. Kendall testified that he was "one hundred percent sure" that Defendant was the person he saw taking the victim's property. The victim testified that Defendant worked for him removing scrap metal and debris from his property during renovations to his house after a fire. The victim noted that on one occasion while Defendant was at the house working, Defendant said, "my old lady had got to come by and see me." A woman later arrived driving a "silverish gray Pontiac Grand Prix."

Based on the evidence presented a rational juror could conclude that Defendant committed the offense of theft of property valued at more than $500 but less than $1,000. Although Defendant presented the testimony of alibi witnesses at trial, the jury was free to reject this testimony and Defendant's alibi defense. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982). "The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of credibility of the witnesses in support of the defense, and of the weight to be given their testimony." Id. (citing *Green v. State*, 512 S.W.2d 641, 643 (Tenn. Crim. App. 1974). Defendant also contends that Linda Kendall's testimony concerning the description of Defendant at the time of the offenses contradicts the photograph of Defendant taken at the recycling center. He asserts that Ms. Kendall testified that Defendant was "clean shaven" but the photograph from Hermitage Recycling taken on the day of the theft showed that Defendant had a beard. However, our review of the record reveals that was not her exact testimony. At trial, the following exchange took place between Ms. Kendall and trial counsel:

[Trial Counsel]:    All right. And the description you gave of the person that did this, you told them that it was a white male, correct?

| | |
|---|---|
| [Ms. Kendall]: | That is correct. |
| [Trial Counsel]: | With brown hair? |
| [Ms. Kendall]: | Yes. |
| [Trial Counsel]: | You're looking at [Defendant] now. Is that the description you gave him? |
| [Ms. Kendall]: | Well, his appearance changes [sic]. |
| [Trial Counsel]: | Okay. Were there any other specific things about his face that you made mention of to the detectives? |
| [Ms. Kendall]: | Well, he's got a beard now. |
| [Trial Counsel]: | How did you describe him then? |
| [Ms. Kendall]: | I said he was a white male, over 200 pounds, and, you know, just I guess about six foot. I can't tell you exactly because I didn't measure him. |

In her testimony, Ms. Kendall never said that Defendant was "clean shaven" on the day of the offenses. The picture of Defendant included in the photographic line-up and chosen by Ms. Kendall as the person she saw taking items from the victim's house, shows that Defendant had facial hair, which we describe as not a full beard, but more akin to two days' growth. The photograph of Defendant at the recycling center also shows facial hair but the photo is of relatively poor quality. This clearly could be accepted by the trier of fact as a few days' growth and not a "full beard" like Ms. Kendall observed at trial when she said Defendant had "a beard now." This issue is without merit.

We conclude that the evidence was sufficient beyond a reasonable doubt to support Defendant's conviction. Defendant is not entitled to relief on this issue.

_____
THOMAS T. WOODALL, PRESIDING JUDGE