# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 14, 2015

## STATE OF TENNESSEE v. MICHAEL BROOKS

**Appeal from the Criminal Court for Shelby County**
**No. 1202650    Chris Craft, Judge**

_____

**No. W2014-01391-CCA-R3-CD  -  Filed September 9, 2015**

_____

A Shelby County Grand Jury returned an indictment against Defendant, Michael Brooks, charging him with two counts of especially aggravated kidnapping, two counts of aggravated robbery, two counts of aggravated assault, aggravated burglary, and employing a firearm during the commission of a felony.  Two co-defendants were also indicted with Defendant, but Defendant was tried by himself.  After the jury trial, Defendant was convicted of one count of especially aggravated kidnapping, two counts of facilitation of aggravated robbery, one count of assault, and aggravated burglary.  He was acquitted of the other charges.  The trial court imposed a sentence of eighteen years for especially aggravated kidnapping, four years for each count of facilitation of aggravated robbery, eleven months and twenty-nine days for assault, and four years for aggravated burglary.  The trial court ordered the sentences to be served concurrently for an effective eighteen-year sentence.  On appeal, Defendant argues that the evidence was insufficient to support his conviction for especially aggravated kidnapping and that his sentence is excessive.  After a thorough review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right, Judgments of the Criminal Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Micah Gates, Memphis, Tennessee, (on appeal); and John Dolan, Memphis, Tennessee, (at trial), for the Appellant, Michael Brooks.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Amy Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Background

On November 23, 2011, the day before Thanksgiving, Warren Galloway and Patricia Jones were at their home located on Alpena Street in Memphis with their four-year-old daughter, J.G, and Ms. Jones' adult nephew Michael Riley. Because J.G. is a minor, we will identify her by her initials. Mr. Riley suffers from cerebral palsy and epilepsy. Mr. Galloway and Ms. Jones were known as the "candy man" and "candy lady" of the neighborhood because they sold chips, soft drinks, pickles, pigs' feet, candy, and other items to people.

At approximately 4:30 p.m. Ms. Jones was preparing food for their Thanksgiving meal when Defendant knocked on the door. J.G. was in her bedroom at the time. Ms. Jones let Defendant into the house, and they had a conversation about "how he used to come over [sic] my brother's house and they have Thanksgiving and Christmas dinner and stuff like that." Ms. Jones had known Defendant since he was a baby, and he had been in her home one other time. Ms. Jones testified that Defendant was going to buy "some candy fruities or something," and Mr. Galloway went to the back of the house to get some bags for the purchase when Defendant opened the door and let three other men into the house.

The three came into the house with guns and announced that it was a robbery. Ms. Jones was ordered to lie on the floor. Mr. Galloway heard the word robbery, and came in and began tussling with the men. He was taken into the living room and placed on the couch. At some point he was hit on the head with a gun. Mr. Galloway also heard one of the men tell his cohorts not to worry about Mr. Riley because "he won't know nothing anyway." Mr. Galloway stopped struggling with the men when they threatened to shoot Ms. Jones in the head, and he went into the kitchen and lay down beside her. Mr. Galloway and Ms. Jones' money, jewelry, watches, and cell phones were taken during the robbery. Defendant, who was also armed, went to the back of the house to J.G.'s room at some point during the robbery.

J.G. testified that she turned her television off when she heard someone say that there was going to be a robbery. She also heard someone tell Mr. Riley to get on the ground and heard Defendant say that Mr. Riley did not "know anything." J.G. testified that Defendant walked into her bedroom and placed a gun to her head and put her into the closet. J.G. testified that she urinated on herself when Defendant put the gun to her head. J.G. testified that she knew Defendant through her mother, uncle, and her mother's nephew. She had also seen Defendant around the neighborhood and at her house buying snacks.

2

After Defendant and the other three men left the house, Ms. Jones saw them running down the street. She ran next door and called police. Mr. Galloway and Ms. Jones later identified Defendant from a photographic line-up.

Detective Jonathan Linton of the Memphis Police Department testified that he responded to the scene on November 23, 2011. He spoke to the individuals in the home who were "visibly shaken up and disturbed as if something had occurred." Detective Linton testified that J.G. appeared to be "scared, terrified." He further testified that J.G. "knew something horrible happened. And she was stressed." J.G. told Detective Linton that Defendant committed the offenses.

Sergeant John Simpson of the Memphis Police Department, Robbery Bureau, testified that he was assigned as the "case officer" in the present case. He testified that Mr. Galloway and Ms. Jones both identified Defendant from a photographic line-up, and he took statements from them. Defendant was then brought to the Robbery Bureau on November 29, 2011, for an interview by Sergeant Simpson and Sergeant Farr. They read Defendant his *Miranda* rights, and Defendant waived those rights and gave a statement. Defendant denied participating in the robbery and having any knowledge of the robbery. He also denied going to Mr. Galloway's and Ms. Jones' house. When Sergeant Simpson reminded Defendant that he was wearing an ankle monitoring bracelet at the time, Defendant said that he was related to Mr. Galloway and Ms. Jones and that he went to their house for ten to fifteen minutes on November 23, 2011, and then left.

Sergeant Simpson then confronted Defendant with the victims' statements. Defendant told Sergeant Simpson that he was at his grandmother's house when the three co-defendants came over and began discussing a robbery at Mr. Galloway's house. Sergeant Simpson further testified:

> [Defendant] told them not to do it because that was his people. That he was related to them and that that wasn't cool. And he said that they left and then he left. Different - - they left in a car. He left on foot. He said that that's when he went over to the victim's house, Warren and Patricia's. And after he was leaving, that's when he saw the co-defendants driving up in a vehicle and run up to the house and he said I guess that's when they got robbed.

Sergeant Simpson interviewed Defendant again on November 30, 2011. Defendant was advised of his *Miranda* rights, and he agreed to give a statement. Sergeant Simpson confronted Defendant with the statements of his co-defendants and

3

noted that their statements were not the same as Defendant's. Sergeant Simpson testified:

> And [Defendant] told us another story that the part about him - - them coming to the grandmother's house was true and that they did leave. And he went to Warren and Patricia's. And he said that when he was leaving he saw the three co-defendants walking up, two with guns, and he said I knew they were going to rob them. And he said that he went ahead and left. And then afterwards the three co-defendants met with him and gave him proceeds from the robbery. So he said that he was there for the planning, was there when the robbery took place and then met with them after and received proceeds from the robbery.

**Analysis**

*I.* *Sufficiency of the Evidence*

Defendant argues that the evidence presented at trial was not sufficient under *State v. White*, 362 S.W.3d 559, 562 (Tenn. 2012), to support his conviction for the kidnapping of J.G. because the kidnapping was "essentially incidental to the [facilitation of] robbery" and the aggravated burglary. We disagree.

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Defendant was convicted of especially aggravated kidnapping, two counts of facilitation of aggravated robbery, one count of assault, and one count of aggravated burglary. The only conviction that Defendant contests on appeal is his conviction for

4

especially aggravated kidnapping. Defendant asserts that his "actions in removing and confining the minor victim were merely incidental to the aggravated burglary and facilitation of aggravated robbery." Especially aggravated kidnapping as charged in this case, "is false imprisonment, as defined in § 39-13-302:" and occurs "(2) Where the victim was under the age of thirteen (13) at the time of the removal or confinement[.]" T.C.A. § 39-13-305(a)(2). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a)(2010).

In *State v. White*, 362 S.W.3d 559 (Tenn. 2012), the supreme court addressed due process considerations affecting convictions for kidnapping and an accompanying felony such as robbery, rape, or assault.. The court held:

> [T]he legislature did not intend for the kidnapping statutes to apply to the removal or confinement of a victim that is essentially incidental to an accompanying felony, such as rape or robbery. This inquiry, however, is a question for the jury after appropriate instructions, which appellate courts review under the sufficiency of the evidence standard as the due process safeguard.

*White*, 362 S.W.3d at 562. The Court determined that the proper inquiry for the jury is "whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." *Id.* at 578. The Court further set forth the following jury instruction:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> • the nature and duration of the victim's removal or confinement by the defendant;
>
> • whether the removal or confinement occurred during the commission of the separate offense;

5

• whether the interference with the victim's liberty was inherent in the nature of the separate offense;

• whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*White,* 362 S.W.3d at 580-81. This instruction was later included in the Tennessee Pattern Jury Instructions. *Id.* at 580-81; 8 Tenn. Prac. Pattern Jury Instr. T.P.I. - Crim. 8.03(a). The absence of a *White* instruction, when warranted, results in constitutional error unless the error was harmless beyond a reasonable doubt. *State v. Cecil*, 409 S.W.3d 599, 610 (Tenn. 2013). It is undisputed, and the record reflects that the trial court in the present case gave the jury the proper instruction in accordance with *White*.

The supreme court recently held that a "kidnapping charge accompanied by an aggravated burglary charge, standing alone, does not warrant a *White* instruction." *State of Tennessee v. Larry Jereller Alston, et al*., ___ S.W.3d ___, No. E2012-00431-SC-R11-CD, 2015 WL 2155690 (Tenn. 2015). However, crimes such as robbery, rape, and assault when charged along with kidnapping may warrant such an instruction. *Id.* In two cases decided after *Alston*, the supreme court addressed the issue of whether a *White* jury instruction must be given when a defendant is charged with the kidnapping and robbery of separate victims. *State v. Jerome Maurice Teats*, ___ S.W.3d ___ , No. M2012-01232-SC-R11-CD, 2015 WL 4237689 (Tenn. 2015); *State v. Ricco R. Williams*, ___ S.W.3d ___, No. W2013-01897-SC-R11-CD, 2015 WL 4260447(Tenn. 2015). In *Teats*, the Court held:

[A] *White* jury instruction is not required when a defendant is charged with the kidnapping and robbery of different victims. The jury instruction we articulated in *White* was intended to address the due process concerns that arise when a defendant is charged with kidnapping a victim and other crimes, such as robbery, rape, or assault, that involve

6

some inherent confinement of that victim. *Cf. State v. Salamon*, 949 A.2d 1092, 1117 (Conn. 2008)("Our legislature . . . intended to exclude from the scope of . . . kidnapping . . . those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against *that victim*." (emphasis added)). Where a defendant is charged with kidnapping and an accompanying offense involving some confinement of the same victim, there are appropriate due process concerns that the defendant could be convicted of two crimes – e.g. robbery and kidnapping – when he has only committed one crime – robbery. But where, as in this case, the State charged the Defendant with robbing the restaurant manager and kidnapping four other employees, the Defendant does not stand the risk of being convicted of kidnapping a victim he confined only long enough to rob. Simply put, the due process concerns articulated in *White* are not present, as the kidnapping of one or more victims can never be "essentially incidental" to an offense perpetrated against a different victim or victims. *See White*, 362 S.W.3d at 580.

*Teats*, ___ S.W.3d ___, 2015 WL 4237689 at *6.

In *Williams* our supreme court held,

Simply put, where a defendant kidnaps one victim while robbing another, the due process concerns articulated in *White* are not present, as the kidnapping of one or more victims can *never* be "essentially incidental" to an offense perpetrated against different a different victim or victims.

*Williams*, ___ S.W.3d ___, 2015 WL 4620447 at *5. (emphasis added)

Similarly in this case, there are no due process concerns as articulated in *White* because Defendant was charged with the robbery of Mr. Galloway and Ms. Jones and the kidnapping of a separate victim, J.G. Therefore, the only question is whether the evidence is sufficient to support Defendant's conviction for especially aggravated kidnapping. The proof showed that while everyone else was confined in the front of the house during the robbery, Defendant went into four-year-old J.G.'s bedroom and placed a gun to her head, scaring the child so badly that she urinated on herself. He then placed her in a closet at gunpoint. We find that Defendant's actions were sufficient to support a conviction for especially aggravated kidnapping. Defendant is not entitled to relief on this issue.

7

## II.   *Sentencing*

Next, Defendant argues that the trial court erred by sentencing him to eighteen years for especially aggravated kidnapping by not considering as a mitigating factor that he voluntarily released the victim alive.

The length, range, and manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, these factors are advisory only. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the

sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

Especially aggravated kidnapping is a Class A felony. T.C.A. § 39-13-305 (b)(1). The applicable sentencing range for a Range I offender convicted of a Class A felony is 15 to 25 years. The trial court imposed an eighteen-year sentence for Defendant's conviction of especially aggravated kidnapping.

Defendant contends that the trial court erred by failing to consider as a mitigating factor at sentencing that the victim was voluntarily released alive. T.C.A. § 39-13-305(b)(2) provides that: "If the offender voluntarily releases the victim alive or voluntarily provided information leading to the victim's safe release, such actions shall be considered by the court as a mitigating factor at the time of sentencing." The record indicates that the trial court found one applicable mitigating factor:

> And the only mitigating thing that I could see about this, looking at the mitigating circumstances is he did confess to the police and admitted to what he did by giving them a statement. I'm not going to give that a whole lot of weight because this is just every person's nightmare is this kind of crime. And being caught, he didn't go to the police and say here's what I did, he was caught and arrested before he admitted his culpability.

While is it debatable whether Defendant *voluntarily* released J.G., she was alive and physically unharmed after the kidnapping. It is not clear from the record when or how J.G. emerged from the closet. Even if the trial court erred by failing to apply this mitigating factor, Defendant would still not be entitled to relief. The law is clear that "a trial court's misapplication of an enhancement factor or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." *Bise*, 380 S.W.3d at 709. A defendant's sentence will be upheld if it is within the appropriate range and generally complies with the purposes of sentencing. *Id*. at 709-10.

In this case, Defendant's eighteen-year sentence for especially aggravated kidnapping is within the statutory range, and the trial court followed the statutory sentencing procedure and made findings of fact that are supported by the record. Defendant is not entitled to relief on this issue.

The judgments are affirmed.

_____

THOMAS T. WOODALL, PRESIDING JUDGE