IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2016

**STATE OF TENNESSEE v. KATHY BELL NOBLE**

**Appeal from the Circuit Court for Williamson County**
**No. IIC-R017732    Walter C Kurtz, Judge**

_____

**No. M2015-02288-CCA-R3-CD – Filed December 22, 2016**

_____


Following a jury trial, Defendant, Kathy Bell Noble, was convicted of driving on a suspended license, violation of the vehicle registration law, and failure to obey a traffic control device. The trial court imposed a sentence of six months and the jury's fine of $500 for driving on a suspended license and concurrent sentences of thirty days each for violation of the vehicle registration law and failure to obey a traffic control device. Defendant was ordered to serve forty-eight hours for driving on a suspended license with the remainder of the sentence subject to supervised probation. The thirty-day sentences for violation of the vehicle registration law and failure to obey a traffic control device were suspended. On appeal, Defendant argues that the evidence was insufficient to support her convictions. After a thorough review, we affirm the judgments of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Matthew J. Crigger, Brentwood, Tennessee, for the Appellant, Kathy Bell Noble.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helpher, District Attorney General; and Tammy Rettig, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

*Background*

Officer Matthew Smalley of the Franklin Police Department Traffic Unit testified that on the night of September 6, 2013, he was travelling southbound on Mallory Lane when he came to the intersection with Liberty Pike. He said:

> And my light, at that time of night the traffic light is flashing red in my direction. And also for traffic coming across the street from North Royal Oaks Boulevard it's flashing red. Liberty Pike the traffic is a flashing yellow light. So, I was stopped waiting for traffic to proceed east and westbound. While I was sitting there, I observed a dark colored Volvo coming towards me, northbound on - - well, it's North Royal Oaks Boulevard and then it changes to Mallory Lane, the road name changes. And that vehicle did not stop for the flashing red light it didn't appear to slow down for the flashing red light. It just proceeded straight through the intersection.

Officer Smalley explained that a motorist can proceed through a flashing yellow light without stopping "as long as you maintain caution and maintain a safe look out." He stated that a flashing red light should be treated as a stop sign. Officer Smalley testified: "So, you have to come to a complete stop before you proceed through the intersection if traffic is clear."

Officer Smalley activated his blue lights and completed a "U-turn because the vehicle was still travelling towards the north." The Volvo pulled into the entrance to Centennial High School, and Officer Smalley exited his patrol car and approached the Volvo. He noticed that the registration stickers on the vehicle's license plate expired in July of 2012. Concerning his interaction with Defendant, Officer Smalley testified:

> I approached and asked [Defendant] for her driver's license, registration and proof of insurance. She provided me with a Georgia driver's license, and that's how I learned that her name was Kathy Noble. I explained to her why I stopped her for going through the red light. And we had a brief conversa - - well, it was more than a brief conversation, it was several minutes about why the light was flashing and what you were supposed to do with that type of intersection. She couldn't provide to me current registration for her vehicle at that time. But she did provide current proof of insurance.

2

Officer Smalley checked the status of Defendant's driver's license and learned that it was suspended. He also verified that her license plate was expired. Defendant acknowledged to Officer Smalley that her registration was not valid and that she had been "stopped several times and given tickets several times in the past for the expired registration."

Officer Smalley looked at Defendant's driver's history and noticed that "there were multiple instances where she was suspended for Failure to Appear in Court and that was the reason listed for her license being suspended." Officer Smalley decided to take Defendant into custody and called Officer Chad McCulley to the scene. Defendant was then taken into custody, and her vehicle was inventoried and towed from the scene. Officer Smalley's encounter with Defendant was video-recorded, and the video was played for the jury.

On cross-examination, Officer Smalley testified that he did not notice if Defendant was speeding or weaving, and she did not place any other vehicle in danger at the intersection. He conceded that while he saw the flashing red light at the intersection from the southbound side of Mallory Lane, he did not look at the light from the northbound side of the road which Defendant had passed through. Officer Smalley admitted that he "never confirmed that that light was actually red when [Defendant] went through it[.]" He also conceded that traffic control lights sometimes malfunction, but he explained: "In my experience, when they malfunction, they stop working as in no lights are displayed whatsoever." Officer Smalley testified that Defendant told him that she had attempted to renew her registration through the mail. He did not conduct any investigation to verify that Defendant had attempted to renew the registration. Officer Smalley said, "Other than what I ran and it did show that it was expired but not beyond that point." He acknowledged that Defendant's driver's license had a valid date, and Defendant appeared to be surprised to learn that her license had been suspended. Officer Smalley testified: "That night, [he] requested an actual driver history on [his] computer in [his] car," but he made no other attempts to determine whether Defendant's driver's license was suspended.

On re-direct examination, Officer Smalley testified that he was "fairly familiar" with the intersection of Mallory Lane and Liberty Pike. He explained, "I patrol it just about every day, somewhere in that area if not that intersection specifically." He had observed the traffic light many times and affirmed that in his experience, if the southbound side of the light is red, the northbound side is also red. Officer Smalley testified that Defendant specifically accused him of "making the light malfunction."

*Analysis*

Defendant contends that the evidence was insufficient to support her convictions for driving on a suspended license, violation of the vehicle registration law, and failure to obey a traffic control device. However, we conclude that the evidence was sufficient beyond a reasonable doubt to support the convictions.

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

## A. Driving on a Suspended License

Tennessee Code Annotated § 55-50-504(a)(1) provides that a person who drives a vehicle "at a time when the person's privilege is cancelled, suspended, or revoked commits a Class B misdemeanor." At trial, Officer Smalley testified that he checked the status of Defendant's driver's license by computer and learned that it was suspended. He also looked at Defendant's driver's history and noticed that "there were multiple instances where she was suspended for Failure to Appear in Court and that was the reason listed for her license being suspended." The trial court also admitted into evidence a document from the State of Georgia indicating that Defendant's driver's license had been suspended for failure to appear on September 3, 2013.

Defendant asserts in her brief that, "Just because a record from another jurisdiction or state is self-authenticating and admissible under the Tennessee Rules of Evidence as a foreign record under seal, it does not mean that the record is accurate and error free." She further argues that the State failed to produce "live witness testimony" to establish Defendant's driving record which indicated that her license was suspended. However, as

4

pointed out by the State, Defendant initially challenged the admission of her driving record at trial arguing that it was "not properly self-authenticated" and that it was not admissible. After examining the document from the State of Georgia more closely, Defendant withdrew her objection. Trial counsel said:

> Judge, I'm going to have to backtrack a little bit, I apologize. The copy that I was provided in discovery of the driving record did not contain a seal. It only contained a certification from someone in Georgia. In looking at the copy that the State had intended to submit [in]to evidence as substantive evidence, I had notice[d] that there was a seal on there, therefore my objection was that it was not properly self authenticating. As I approached the bench and looked at it, I do see that there is in fact a seal. So I think that on those grounds I will object that it is not - - it is properly self authenticated. So, I withdraw my objection, however I will state that I was not given that same exact - - I wasn't give[n] a copy with a seal in my discovery. And so I don't have a copy of that document that the State is trying to - -

Defendant has waived any objection to the admissibility of the document, and Defendant has offered nothing to challenge the reliability of the evidence other than speculation. The evidence is sufficient for a reasonable juror to determine that Defendant's license had been suspended at the time that she was stopped by Officer Smalley. Defendant is not entitled to relief as to this issue.

### B. Violation of the Vehicle Registration Law

Tennessee Code Annotated section 55-4-101 requires that all motor vehicles operating on Tennessee streets or highways be registered. Tennessee Code Annotated section 55-4-108 requires that a certificate of registration be carried in the vehicle and that it must be displayed on demand of any officer. Tennessee Code Annotated section 55-4-110 further requires that a registration plate be attached to the rear of the motor vehicle. The defendant argues that the evidence was insufficient to support the conviction for violation of the vehicle registration law because "the State did not offer any evidence to negate [her] assertion that she had actually paid for her registration."

Defendant acknowledged to Officer Smalley that her registration was not valid and that she had been "stopped several times and given tickets several times in the past for the expired registration." As pointed out by the State, Defendant was obligated to maintain her registration, to carry a certificate of registration in her vehicle, and to maintain a current license plate on the vehicle. Defendant clearly failed to meet those

5

requirements, and the evidence was sufficient to support her conviction for violation of the vehicle registration law. Defendant is not entitled to relief on this issue.

### C. Failure to Obey a Traffic Control Device

Tennessee Code Annotated section 55-8-109(a) provides that "[t]he driver of any vehicle . . . shall obey the instructions of any official traffic-control device applicable thereto." Defendant argues that the evidence was insufficient to support her conviction for failure to obey a traffic control device because "Officer Smalley did not personally observe the traffic light at the intersection at which [Defendant] failed to stop to verify that it was a flashing red light and that it was otherwise working properly."

Officer Smalley testified that the traffic light on the southbound side of Mallory Lane and Liberty Pike was flashing red when he observed Defendant travelling northbound on North Royal Oaks, which changes into Mallory Lane after crossing Liberty Pike. He noted that Defendant's vehicle did not stop or slow down for the flashing red light. "It just proceeded through the intersection." Officer Smalley explained that a motorist can proceed through a flashing yellow light without stopping "as long as you maintain caution and maintain a safe look out." He stated that a flashing red light should be treated as a stop sign. Officer Smalley testified: "So, you have to come to a complete stop before you proceed through the intersection if traffic is clear." Although Officer Smalley testified that he did not verify that the light on the northbound side of North Royal Oaks was flashing red when Defendant passed through it, he said that in his experience if the southbound light was red, the northbound light was "also red." Officer Smalley also admitted that he had seen traffic lights malfunction in his experience as a police officer; however, the malfunction usually resulted in the entire loss of function of the light and not a partial loss.

As we noted earlier, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." There was circumstantial evidence in this case that the traffic light was flashing red when Defendant passed through it without stopping. Therefore, a rational juror could find beyond a reasonable doubt that Defendant failed to obey a traffic control device. Defendant is not entitled to relief on this issue.

The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

6