IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 7, 2016

**STATE OF TENNESSEE v. ANDREW CURTIS BEARD**

**Appeal from the Circuit Court for Gibson County**
No. 9414      Clayburn Peeples, Judge
_____

**No. W2016-00223-CCA-R3-CD  -  Filed January 24, 2017**
_____

A Gibson County Circuit Court Jury convicted the Appellant, Andrew Curtis Beard, of selling less than one-half gram of cocaine, a Class C felony, and he was sentenced as a Range II, multiple offender to eight years in confinement. On appeal, the Appellant contends that the evidence is insufficient to support the conviction. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

J. Daniel Rogers, Trenton, Tennessee, for the appellant, Andrew Curtis Beard.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jason Scott and Jennifer McEwen, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In March 2013, the Gibson County Grand Jury returned a two-count indictment, charging the Appellant with selling and delivering less than one-half gram of cocaine on November 14, 2012. At the Appellant's July 2015 trial, Danny Lewis testified that he currently was the Chief Deputy of the Gibson County Sheriff's Department but was the Assistant Special Agent in charge of the Twenty-Eighth Judicial District Drug Task Force in November 2012. At some point, John "Pete" Beavers agreed to help the Drug Task

Force by purchasing cocaine and other illegal drugs from drug dealers in the community. Beavers was paid $100 for each transaction he arranged "whether he made a buy or not."

Deputy Lewis testified that on November 14, 2012, he and another officer met Beavers at a designated meeting area. Deputy Lewis searched Beavers and Beavers' vehicle, provided Beavers with money that had been photocopied, and wired Beavers with an audio transmission device and video recording equipment. Beavers placed a telephone call to Keith Cole, and Cole said he would meet Beavers at Beavers' home. Beavers drove from the meeting place to his house and waited outside for Cole to arrive. When Cole pulled up, the Appellant was with him.

Deputy Lewis testified that the drug transaction was video recorded, and the State played the video for the jury. Deputy Lewis said that after the drug buy, he searched Beavers and Beavers' vehicle and that Beavers gave him a small baggie containing white powder. The substance field-tested positive for cocaine, and Deputy Lewis delivered the baggie to the Tennessee Bureau of Investigation (TBI) Crime Laboratory.

On cross-examination, Deputy Lewis acknowledged that Cole was the target of the drug buy and was driving the car that arrived at Beavers' home. Deputy Lewis said that when he watched the video, though, he "didn't see Keith Cole reach across at all" and that the exchange appeared to occur with the Appellant. On redirect examination, Deputy Lewis testified that he did not see Beavers reach for anything from Cole or hand anything to Cole in the video.

John "Pete" Beavers testified that he was forty-five years old and used to be a drug addict. He "got caught" with marijuana and offered to work for the Drug Task Force. On November 14, 2012, Beavers telephoned Deputy Lewis and said he "had somebody." Beavers met with Deputy Lewis, Deputy Lewis gave Beavers $100 to buy crack cocaine from Keith Cole, and Beavers telephoned Cole. Cole told Beavers that he did not have the drugs with him but that "he knew somebody that had them." Beavers said he agreed to meet Cole at Beavers' house so that the Appellant could give him the drugs. A camera was in the button hole of Beavers' shirt.

Beavers testified that when the car pulled up at his house, Cole was driving, and the Appellant was the passenger. Beavers said that he knew both men and that he had never had any problems or disagreements with the Appellant. Beavers stated that he gave the money to the Appellant, that the Appellant gave him the cocaine, and that he did not see Cole pass the cocaine to the Appellant. He stated, "I didn't get nothing from Mr. Cole." The cocaine was powder instead of crack, so Beavers asked if the Appellant could "get any hard." Cole and the Appellant offered to "cook it up" for Beavers, but Beavers told them people were in his house. After the sale, Beavers met with Deputy Lewis. He

acknowledged that he had multiple prior felony convictions for thefts, burglaries, and forgeries and that his last conviction was in 2004.

On cross-examination, Beavers testified that Deputy Lewis searched him before and after the drug buy. He said that while he was waiting for Cole to arrive, the Appellant telephoned and said, "I'm here." A couple of days before the transaction, Beard bought drugs from Cole, and the Appellant was with Cole. Beavers estimated that he had twelve prior felony convictions.

Special Agent Forensic Scientist Brock Sain of the TBI testified as an expert in controlled substance identification that he analyzed the powder in the baggie. It was cocaine and weighed 0.24 grams. At the conclusion of Agent Sain's testimony, the State rested its case.

Easter Beard, the Appellant's mother, testified that she adopted the Appellant and that he was thirty-six years old at the time of trial. She said that the Appellant was probably born from "a crack mother" and that she thought he was born with an addiction to crack cocaine. The Appellant had never obtained treatment. She said, "We tried to get him in rehab, but not having any insurance it was hard."

The jury convicted the Appellant of selling cocaine, a Class C felony. After a sentencing hearing, the trial court sentenced him as a Range II, multiple offender to eight years in confinement.

## II. Analysis

The Appellant contends that the evidence is insufficient to support his conviction of selling cocaine because the video does not show conclusively that he sold the cocaine to Beavers and because Beavers was not credible. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the

circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

The Appellant claims that the evidence is insufficient because the video does not conclusively show him selling the cocaine to Beavers. We have reviewed the video recording. It shows Beavers leaving the meeting place with Deputy Lewis, arriving at his home, and waiting in his car. About ten minutes later, Beard can be heard telling Deputy Lewis that a Pontiac Grand Am is arriving. Beard gets out of his vehicle and approaches the passenger-side of the Pontiac. An African-American male is in the driver's seat, and an African-American male is in the passenger seat. One of them hands something to Beavers. However, the exchange cannot be seen in the video. Beavers asks if they have any "hard," and the driver asks Beavers if Beavers "knows how to cook it." Beavers says no, so the passenger offers to "cook it" for him. Beavers declines, thanks the men, and returns to his car. We agree with the Appellant that the video does not conclusively show him and Beavers exchanging cocaine and money.

Nevertheless, Beavers testified that he gave the money to the Appellant and that the Appellant gave him the drugs. He stated, "We met at my house and Mr. Beard give me the drugs. He had the drugs. I didn't get nothing from Mr. Cole." Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Thus, the evidence is sufficient to support the conviction.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.


                          _____
                          NORMA MCGEE OGLE, JUDGE